AGNES CAMERON, as Administratrix, etc., of ALLAN CAMERON, Deceased, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Master and servant — duty of an employer to hire competent servants — superintendence over — competency and incompetency defined — liability for their neglect of duty — constructive notice — a question of fact — proof of knowledge by co-employees.*

A competent servant is one who may be relied upon to execute the rules of his master unless prevented by causes beyond his control. The competency or incompetency of a servant is determined not alone by physical or mental attributes, but also by the disposition with which he performs his duties. If he habitually neglects those duties he becomes unreliable, and although he may be physically and mentally able to do well all that is required of him, his disposition towards his work and his fellow-servants makes him an incompetent man.

It is the duty of an employer not only to hire competent servants, but also to see to it that they remain competent, and for that purpose he must maintain a vigilant watch and superintendence over them.

When an employer procures competent and reliable men he is not answerable for the first lapse of duty by reason of their carelessness or negligence, but when such failure of duty becomes habitual or of frequent occurrence, he is chargeable with any damage resulting therefrom, if he has notice of such conduct on the part of his employees, or if, by a reasonable supervision of those employed in his service, he could have acquired notice or knowledge of such carelessness or neglect of duty.

In an action brought by an employee against a corporation for injuries alleged to have resulted from its negligence, it is a proper question of fact to be submitted to the jury whether the accustomed violation of the rules of the corporation, and the habitual neglect of duty on the part of one of its employees had been so frequent and long continued as to satisfy the jury that a careful supervision would have brought the matter to the knowledge of the corporation.

Proof of knowledge by co-employees of such neglect of duty by a fellow-servant, while not evidence of notice to the master, is competent upon the question as to the master's diligence in supervising his employees.

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Ulster on the 26th day of April, 1893, upon the verdict of a jury rendered after a trial at the Ulster Circuit, and also from an order entered in said clerk's office on the 25th day of April, 1893, denying the defendant's motion for a new trial made upon the minutes.

*F. L. Westbrook* and *Ashbel Green*, for the appellant.

*John M. Gardner*, for the respondent.

HERRICK, J. :

The plaintiff's intestate, Allan Cameron, was of about the age of twenty years, and had been in the employ of the defendant as a brakeman for about a year prior to his death by the accident in question.

The train upon which he was employed started from Kingston on defendant's road on the morning of the 7th of May, 1891; on arriving at Marlborough, a station about twenty miles south of Kingston, it passed on to a switch or freight track and stopped in front of the freight depot.

At this point on defendant's road there are two main tracks, one known as the south-bound track and the other as the north-bound track; on the west of these two tracks is a side track for freight and a side track to a gravel pit, and on the east of the main tracks and between them and the Hudson river there is another side track.

At the time in question there was on the side track to the gravel pit a car to be taken out and put on the other track, and a car was to be taken from the freight train on which young Cameron was employed and left at Marlborough.

On the side track east of the main tracks were a number of cars, one of which was to be taken and attached to this freight train and taken away as part of it.

While the freight train was at this depot, an express train known

as No. 11 passed by on the easterly or north-bound track, carrying signals indicating that it was followed by another train running on the same time schedule, and entitled to the same time-table rights as the train carrying the signals.

Before No. 11 had passed, the conductor of the freight train had told the brakeman what was to be done as to leaving and taking on the cars already spoken of.

After train No. 11 had passed, the conductor of the freight train gave directions not to cross until the second section, which was following No. 11, had gone by; at this point there is what is called a crossover switch, by which cars may be switched from one track to the other; before the second section of train No. 11 had gone by, Cameron and a brakeman named Norton went across the main tracks to the switch east of the main tracks where Norton told Cameron which car was to be taken from it; they then started to go back; Norton opened the crossover switch at the north-bound track and left it open; he then went towards the westerly main track, that being towards the south-bound end of the switch, with the intention of opening that end of the switch, but before he got there, hearing the engine that was following train No. 11 coming up the track, he started to close the switch he had opened, but did not arrive there in time, and the engine passed over the open switch on the south-bound track and ran into the cars standing thereon; Cameron, the intestate, who was engaged with those cars, was jammed by the collision and was so injured that he subsequently died.

Rule 117 of the defendant's rules and regulations provides that " Whoever opens a switch shall remain at it until it is closed, unless relieved by some other competent employee."

The brakeman Norton was familiar with these rules, and had a copy of the rules and regulations for the conduct of defendant's employees in his possession.

Rule 4 reads : " Every employee of this company whose duties in any way are prescribed by these rules must always have a copy of them at hand when on duty, and must be conversant with every rule. He must render all the assistance in his power in carrying them out, and immediately report any infringement of them to the head of his department."

Norton had been in the employ of the defendant over a year and a half, and was promoted to brakeman, and had been employed as brakeman for some eight or nine months prior to the happening of this accident. He was a witness upon the trial and testified that he had been in the habit of opening switches in the manner in which he operated the one in question on the day of the accident for eight or nine months; that is, opening them and then going away and leaving them open; that he did it almost daily.

It is conceded that leaving the switch open was the cause of the accident.

At the close of the plaintiff's case the trial court, in denying the motion for a nonsuit, announced that the only question to be determined was the incompetency of Norton, and that was the principal issue, and indeed the only issue, finally presented to the jury for their consideration in determining the liability of the defendant.

It is conceded that Norton was, at the time of his employment and at the time of his promotion to the position of brakeman, a competent man, and the question is, assuming his story to be true, whether the violation of the rule habitually indulged in by him rendered him an incompetent man, and whether the defendant had notice of his habitual disregard of the rule in question.

Norton's own testimony shows him to have been an incompetent servant. " A competent man is a reliable man; one who may be relied upon to execute the rules of the master, unless prevented by causes beyond his own control. Hence, incompetency exists not alone in physical or mental attributes, but in the disposition with which a servant performs his duties. If he habitually neglects these duties he becomes unreliable, and although he may be physically and mentally able to do well all that is required of him, his disposition toward his work and toward the general safety of the work of his employer and to his fellow-servants makes him an incompetent man." (*Coppins* v. *N. Y. C. & H. R. R. R. Co.*, 122 N. Y. 557–564.)

It is true that when Norton was hired, and when he was promoted to the position of brakeman, he was a competent man, but the duty of the defendant did not end there; not only is it its duty to secure competent men, but it must see to it that they remain competent, and for that purpose it must maintain a vigilant watch and super-

intendence over its men, just as it does over its tracks, engines and cars.

Of course, having procured competent and reliable men, it is not answerable for the first lapse of duty by reason of the carelessness or negligence of the men so hired, but when such failure of duty becomes habitual or of frequent occurrence then it is chargeable with any damages resulting therefrom, if it has notice of such conduct on the part of its employee, or if, by a reasonable supervision of those employed in its service, it could have acquired notice or knowledge of such carelessness or neglect of duty.

Upon the trial the defendant produced the division superintendent having charge of that division of the road where the accident happened, and other officers or employees of the defendant, superior in rank to either Norton or Cameron, who all testified that they had no knowledge, and had never heard, of any neglect of duty by Norton, and had never heard of his alleged practice of leaving switches after he had opened them.

Railroad corporations can only receive notice of the condition of their roads, and the conduct of those employed by them, through their officers; and for the purposes of this case it will be assumed that the defendant by the testimony produced upon the trial established the fact that it had no actual notice of the manner in which Norton discharged his duties, but that is not sufficient to relieve it from responsibility; if the careless discharge of his duty was continued for such a length of time that a careful and diligent supervision of its employees ought to have brought such lapse of duty to its notice, then it is chargeable with knowledge. (*Whittaker* v. *D. & H. C. Co.*, 126 N. Y. 544.)

The jury having found, as it must have found, that Norton neglected his duty in the manner heretofore detailed, that he was accustomed to violate the rules of the defendant in that particular, it was a question of fact proper to be submitted to them, whether such violation of the rules and habitual neglect of duty had been so. frequent and long continued as to satisfy them that a careful supervision would have brought it to the knowledge of the defendant, which necessarily included in it the further question of fact, did the defendant so diligently supervise the work of its employees as to prevent their becoming negligent and careless in the discharge of

their duties, and violating the rules of the defendant established for their guidance.

These were questions of fact proper to be submitted to the jury, and I do not think that the trial court erred in refusing to nonsuit, and permitting the case to go to the jury.

No exceptions appear to have been taken to the manner in which the issues to be determined by them were submitted to the jury.

I do not think the court erred in admitting evidence that employees of the road knew Norton's habit of violating the rule in question. While knowledge by Norton's co-employees of his violation of the rules was not necessarily notice to the defendant, yet I think it was competent to prove that such violation was not secret, but was open and frequent; it was evidence that properly might be taken into consideration by the jury upon the question as to whether, if the defendant had diligently supervised its employees, it would not have discovered such neglect of duty.

For these reasons the judgment, I think, should be affirmed, with costs.

MAYHAM, P. J., and PUTNAM, J., concurred.

Judgment affirmed, with costs.