JOHN CONNORS, Appellant, *v.* ROCKAWAY WHIRLPOOL CO., INC., Respondent.

LENA CONNORS, Appellant, *v.* ROCKAWAY WHIRLPOOL CO., INC., Respondent.

*Negligence — action by wife to recover for personal injuries and action by husband to recover for loss of services of wife — wife suffered injuries while riding in mechanical device called " Whirlpool " — negligence alleged consisted of failure to have " tubs " or circular cars equipped with straps or guards and existence of bolt in bottom of car on which injured plaintiff fell and was injured — dismissal of complaint at close of plaintiffs' case affirmed.*

Appeals from judgments of the Supreme Court in favor of the defendant, entered in the New York county clerk's office July 8, 1924, dismissing the complaints at the close of plaintiffs' case upon a trial at the New York Trial Term.

Judgments affirmed, with costs. No opinion. Present — Clarke, P. J., Dowling, Merrell, McAvoy and Burr, JJ.; Burr, J., dissents.

BURR, J. (dissenting): These actions grew out of personal injuries alleged to have been sustained by the plaintiff Lena Connors through the negligence of, defendant. She sues to recover damages for such injuries, and her husband, the plaintiff John Connors, sues to recover for loss of his wife's services. The defendant, on July 23, 1921, was engaged in conducting and operating for profit, at Seaside, Rockaway Beach, N. Y., an amusement called the " Whirlpool," and in connection therewith operated and maintained certain cars which the public were invited to enter and ride in, upon payment of an admission fee. On the day in question the plaintiff Lena Connors paid the admission fee for herself and three children, and they thereupon entered one of the defendant's circular cars (referred to as a " tub ") and seated themselves in it. These cars or tubs revolved on a circular metal platform, the motion causing the cars to bump into each other. The car in which the plaintiff and her children were riding contained a seat which ran entirely around the car, but the car contained no straps, fastenings, rails or guards of any kind. When they entered and seated themselves in the car it was stationary. The ride started, the machinery causing the cars to revolve and causing them to collide with each other, and this continued for a period of seven to ten minutes, when the plaintiff, in an effort to save one of the children from being thrown from the seat, lost her balance and was herself thrown from the seat to the floor of the car, her right leg violently striking an old and rusty metal bolt which protruded through the floor about half an inch. The metal bolt entered the plaintiff's right leg, penetrating the bone and causing the plaintiff to sustain very serious injuries. At the close of plaintiff's proof the court dismissed the complaint in each case, holding that the existence of the bolt was not the proximate cause of the accident. Although the plaintiff's counsel asked to go to the jury on the question whether the defendant was negligent in permitting the car to be and remain in an unsafe condition, considering the relationship of the parties, the nature of the amusement and the use to which the car was put, the motion was denied, and an exception noted. The complaint alleges that the injuries suffered by the plaintiff were due to the defendant's negligence in improperly operating and controlling the various devices connected with the amusement car, so that she was violently thrown from her seat in the car to the floor thereof; also in failing to properly inspect the car or tub, and in failing to maintain it in

a safe condition. The defendant being engaged in an enterprise for profit and having invited the public to enter its car and to avail itself of this form of amusement, was obligated to use reasonable care in its maintenance and operation for the safety and protection of its patrons. This is pointed out clearly in *Barrett* v. *Lake Ontario Beach Improvement Co.* (174 N. Y. 310), where the court says (p. 316): " All persons were invited, upon the payment of an entrance fee, to make use of this structure and the amusement provided for involved some risks. These risks attending an amusement which was prepared to allure the public for their emolument, the proprietors, or lessors, were bound to anticipate and to protect against; so far as they were not necessarily incidental thereto. A stricter measure of duty was involved, in preparing such a structure to induce the public use, and it was required that the risks should be minimized, to the extent that reasonably prudent men might foresee the necessity of doing so. The risk of falling from the platform may have been apparent to persons using it; but those persons had the right to assume that they went there without incurring any risk which might have been reasonably anticipated by the proprietor of the concern. They came there by invitation and with the right to believe that every reasonable care had been taken for their safety  *  *  *. That an accident of the same kind had never before happened furnishes no ground of defense, if it might, in reason, have been anticipated." The cars used in connection with this amusement were designed for the use of the public, and if by reason of the lack of reasonable care on the part of defendant they were structurally defective, or in any manner faulty, any injury sustained by a person during such use rendered the defendant liable for negligence. In *Shields* v. *Van Kelton Amusement Corporation* (228 N. Y. 396, 397), which involved a skating rink, the rule is stated as follows: " The defendant, having invited the public to go upon the ice, was obligated to use reasonable care for its protection." In addition to the alleged negligence in the operation of the amusement, to wit, the force and speed at which the cars were operated, the failure to provide suitable guards or straps to prevent the occupants of the car from being thrown either out of the car or into it, plaintiff proved the failure to maintain the car in a reasonably safe condition, free from defects. There were at least two causes which made this accident possible, and the negligence of the defendant in respect to either one or both were questions of fact for the jury. It was, therefore, error to dismiss the complaint and refuse to submit to the jury the issues of the defendant's negligence in failing to provide the plaintiff, as a patron, with a reasonably safe vehicle, and whether defendant was negligent in suffering and permitting the metal bolts to protrude through the floor of the car. Plaintiff was entitled to prove every act of negligence charged against the defendant. Concurrent causes may be shown, and if it appear that either one is an efficient cause contributing to the ultimate injury, the defendant becomes liable, and the plaintiff is entitled to recover. (*Sweet* v. *Perkins*, 196 N. Y. 482; *Finkle* v. *Bolton Landing Lumber Co.*, 148 App. Div. 500, 502.) In *Lumsden* v. *Thompson Scenic Railway Co.* (130 App. Div. 209), relied upon by defendant, the court pointed out that there was no claim of unsafe construction or maintenance of the appliance, the court saying (at p. 213): " There was no question in this case of improper construction, improper or unusual speed, or defect in the machinery or structure." Here, however, the maintenance of the car in a negligent and unsafe condition because of the presence of the rusty bolts on the bottom is alleged as one of the

causes of the accident. In other words, what was likely to occur did occur. The plaintiff fell to the bottom of the vehicle and the rusty bolt she fell on entered her leg. The question of negligence in maintaining such bolt was a question for the jury. A *prima facie* case of negligence was established by the plaintiffs' evidence. The dismissal of the complaint and the refusal to submit the question to the jury was error. The judgment of the court below should be reversed, with costs, and a new trial ordered in each case, with costs to appellants to abide the event.